UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

UNITED STATES OF AMERICA,

   -v-

REINALDO ROMAN,

                    Defendants.

CRIMINAL ACTION No. 19 Cr. 116 (KMW)

**ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

The Court has received Defendant Reinaldo Roman's Letter-Motion for Bail Pending Sentencing (ECF No. 148), and his supplemental letter dated March 26, 2020 (the "Motion"). The Government opposes the request. Given the existence of the COVID-19 pandemic, telephonic hearings were held on March 26, 2020 and March 27, 2020, with Mr. Roman having waived his appearance. For the reasons set forth below, Mr. Roman's Motion is GRANTED.

On February 21, 2019, Mr. Roman was charged with one count of narcotics conspiracy in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 for his role in sales of fentanyl, heroin, and cocaine. (ECF No. 1 ¶¶ 4, 6, 7). At his initial appearance before The Honorable Ona T. Wang, Mr. Roman was arraigned and detained on consent. (ECF No. 16). On April 5, 2019, The Honorable Robert W. Lehrburger held a bail hearing and ordered that Mr. Roman continue to be detained based on a finding that he posed a danger to the community. (ECF No. 37). On July 11, 2019, the Honorable Ronnie Abrams held a bail hearing and ordered that Mr. Roman continue to be detained based on a finding that he posed a danger to the community. (ECF No. 64; July 11, 2019 (Minute Entry)).

On October 21, 2019, Mr. Roman pleaded guilty to conspiring to distribute heroin and fentanyl, and was ordered to remain detained. (ECF Nos. 82; 90; 91; Oct. 21, 2019 (Minute Entry)). Mr. Roman's sentencing was originally scheduled to occur before The Honorable Kimba M. Wood on January 23, 2020 (ECF No. 89), but was thrice adjourned at Mr. Roman's request and rescheduled for March 17, 2020 (ECF Nos. 103, 124, 139). On March 13, 2020, in light of the COVID-19 pandemic, District Judge Wood adjourned Mr. Roman's sentencing sine die. (ECF No. 146).

In a case such as this, involving a crime under the Controlled Substances Act for which a maximum term of imprisonment of ten years or more is prescribed, detention pending sentencing is mandatory under 18 U.S.C. § 3143(a)(2) unless the Court finds (1) a substantial likelihood that a motion for acquittal or a new trial will be granted or an attorney for the government has recommended that no imprisonment will be imposed, and (2) by "clear and convincing evidence" that the defendant is not likely to flee or pose a danger to any person or the community. 18 U.S.C. §§ 3142(f)(1)(C), 3143(a)(2). Pursuant to this provision, Mr. Roman's detention was continued following his plea allocution.

Mr. Roman now seeks review of his detention order, relying on 18 U.S.C. § 3154(c), which provides, in relevant part:

> A person subject to detention pursuant to section 3143(a)(2) . . ., and who meets the conditions of release set forth in section 3143(a)(1) . . ., may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c).

Under the law of the Second Circuit, "exceptional reasons" permitting the release of a defendant subject to mandatory detention are those that "present a unique combination of

2

circumstances giving rise to situations that are out of the ordinary." United States v. DiSomma, 951 F.2d 494, 497 (2d Cir. 1991). Determining whether a defendant has presented exceptional reasons under section 3145 requires a case-by-case evaluation, and the Court's discretion is "constrained only by the language of the statute: 'exceptional reasons.'" Id.

      Mr. Roman argues that the combination of the COVID-19 pandemic and the fact that he has preexisting conditions that heighten his risk of complications from the virus present exceptional reasons to justify his release pending sentencing, which has now been adjourned without date. (ECF No. 148). Mr. Roman is a 56-year-old male who suffers from hypertension, for which he takes medications including Atorvastatin, DULoxetine, and Lisinopril. (Letter from Sher Tremonte dated Mar. 26, 2020 (Ex. 6)). In addition, in January 2020, Mr. Roman suffered a ruptured brain aneurysm, for which he underwent neurosurgery at Weill-Cornell Medical Center and was in intensive care for three weeks. (ECF No. 148 at 7-8). In addition, Mr. Roman has provided information to the Court indicating that he has two unruptured aneurysms that require regular monitoring. (Id.)

The Court finds that Mr. Roman has established exceptional reasons warranting his release pending sentencing. COVID-19 presents an unprecedented public health crisis. Given that the virus has infiltrated the Metropolitan Correctional Center, see BOP: COVID-19 Update, Fed. Bureau Prisons, https://www.bop.gov/coronavirus (last updated Mar. 25, 2020) (confirming that one MCC inmate tested positive as of March 24, 2020), Mr. Roman's age and medical condition elevate his risk of complications from the virus. Specifically, the fact that he takes Lisinopril, an ACE inhibitor, to treat his hypertension likely places him "at higher risk for severe COVID-19 infection." Lei Fang et al., Are Patients with Hypertension and Diabetes Mellitus at Increased Risk

for COVID-19 Infection?, Lancet (Mar. 11, 2020), at 1, https://www.thelancet.com/action/showPdf?pii=S2213-2600%2820%2930116-8 (last visited Mar. 27, 2020).  See United States v. Witter, No. 19 Crim. 568 (SHS) (ECF No. 40) (S.D.N.Y. Mar. 26, 2020).  In addition, having recently undergone surgery and been in intensive care, combined with the presence of additional unruptured brain aneurysms, may pose an additional risk of COVID-19 infection.  See How Surgery Affects the Immune System, BREASTCANCER.ORG, https://www.breastcancer.org/tips/immune/cancer/surgery ("Any type of major surgery can stress the body and suppress the immune system. . . . It can take a couple of weeks to many months for the immune system to recover fully. During this time, you're more prone to infections that can affect any area of the body, such as the sinuses, throat, mouth, lungs, skin, and urinary tract.") (last visited Mar. 27, 2020)); Giada Amodeo, Dario Burgada, Silvia Franchi, et al., Immune Function After Major Surgical Interventions:  The Effect of Postoperative Pain Treatment, 11 J. Pain Research 1297 (2018) (describing impaired immune function after major surgeries); see also Centers for Disease Control and Prevention, Information for Healthcare Professionals: COVID-19 and Underlying Conditions, Coronavirus Disease 2019 (COVID-19) (Mar. 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html (describing risks to immune-compromised individuals).

Therefore, the Court finds that Mr. Roman's risk of serious infection while in custody as a result of his medical conditions "present[s] a unique combination of circumstances giving rise to [a] situation[] that [is] out of the ordinary."  DiSomma, 951 F.2d at 497; see also United States v. Perez, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application given "the unique confluence of serious health issues and other risk factors facing

this defendant, . . . which place him at a substantially heightened risk of dangerous complications should he contract COVID-19"). This Order should not, however, be construed as a determination by the Court that detention at MCC or elsewhere at the present time is per se unsafe or otherwise inappropriate as a general matter or in any other specific case. To be clear, Mr. Roman has made a unique showing based on detailed documentation specific to his personal circumstances of multiple medical conditions that, in combination, make his situation "out of the ordinary." DiSomma, 951 F.2d at 497. [1]

In addition to determining that exceptional reasons for release exist, the Court must also find that Mr. Roman meets the conditions of release set forth in section 3143(a)(1). 18 U.S.C. § 3145(c). Section 3143(a)(1) requires that, to release the defendant, the Court find "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3145(a)(1).

The Court concludes that there is clear and convincing evidence that Mr. Roman is neither likely to flee nor poses a danger to the safety of others in the community. While Mr. Roman's participation in a narcotics conspiracy involving heroin and fentanyl perpetuated a danger to the community at the time, Mr. Roman's counsel has represented to the Court that during the thirteen months of his detention, he has become and remained sober, has incurred no disciplinary charges at MCC, and has participated in twelve educational programs. (Letter from Sher Tremonte dated Mar. 26, 2020 (Ex. 4)). While he is virtually certain to face a prison sentence, he is not subject to a mandatory minimum sentence and the United States Probation

---

[1] Although Mr. Roman has raised certain aspects of his family circumstances as warranting release (ECF No. 148 at 8-9), the Court finds that these circumstances do not rise to the level of exceptional reasons for his release and they are therefore not a factor in the Court's ruling.

5

Department has recommended a below-guidelines range sentence of 60 months, such that his impending sentence does not increase his risk of flight. (ECF Nos. 125, 144). In addition, as described above, because of his medical conditions, self-isolation is critical to minimize the risk of COVID-19 infection. If released, he proposes to reside with his father, his domestic partner, and her sons, with whom he has close ties. (ECF No. 148). Finally, the very strict conditions the Court imposes below will be adequate to ensure that Mr. Roman will appear in court pending sentencing in this case.

Accordingly, IT IS HEREBY ORDERED that the Motion is GRANTED and Mr. Roman shall be released pending his sentencing date on the following conditions:

(1) Mr. Roman must post a bond of $50,000 co-signed by three (3) responsible persons, <u>one</u> of which must be obtained prior to his release.

(2) Mr. Roman shall be placed under 24-Hour <u>HOME INCARCERATION</u> to be enforced by location monitoring technology to be determined by Pretrial Services. Mr. Roman may only leave his residence for necessary medical services. All other leave from the residence must be submitted through defense counsel for the Court's approval.

(3) Mr. Roman is permitted to self-install the monitoring equipment under the direction and instruction of Pretrial Services.

(4) Mr. Roman will reside at 2118 Wallace Avenue Apt. 3C, Bronx, NY 10462 and may not relocate without prior approval by Pretrial Services.

(5) Travel is restricted to the Southern and Eastern Districts of New York.

(6) The residence is not to have visitors other than family members or medical personnel.

(7) Mr. Roman must surrender any passport and may not make any new applications for any travel documents.

(8) Drug testing and treatment, and mental health evaluation and treatment, as directed by Pretrial Services.

(9) Pretrial supervision as directed by Pretrial Services.

(10) Mr. Roman may not possess any firearm, destructive device, or other weapon.

(11) Within two weeks of his release, Mr. Roman must purchase or secure an iPhone with Facetime capabilities for remote/virtual monitoring by Pretrial Services.

(12) When home visits are scheduled by Pretrial Services, to the best of his ability, Mr. Roman shall comply with Pretrial Services requests to remove all cohabitants of the residents prior to the visit.

(13) Mr. Roman must report and disclose to Pretrial Services when any cohabitant of the residence, including self, may be symptomatic of any illness

(14) Mr. Roman shall not be released until all conditions are met, including the availability of location monitoring equipment, with the exception of obtaining <u>two</u> of the three signatures of financially responsible persons, which must be obtained within one week of his release.

(15) Within 24 hours of Mr. Roman's release, Mr. Roman's counsel must contact the Court to arrange a conference call in which Mr. Roman will participate to enable the Court to deliver the warnings about the importance of compliance with these conditions.

(16)   This order shall be effective for a period not to exceed 60 days, at which time the need for continued release under the "compelling reason" that release was ordered shall be revisited by the Court.


Dated:   New York, New York
         March 27, 2020

                                        SO ORDERED

                                        _____
                                        SARAH L. CAVE
                                        **United States Magistrate Judge**